NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | |
| MICHAEL J. WORKMAN, individually : | **Hon. Dennis M. Cavanaugh** |
| and in his capacity as Personal : | |
| Representative of the Estate of Mrs. : | **OPINION** |
| Raquel Workman and her heirs-at-law, : | |
| JR., : | Case No. 06-2523 (DMC) |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| JOHNSON & JOHNSON, JANSSEN, : | |
| L.P. a/k/a  JANSSEN : | |
| PHARMACEUTICAL PRODUCTS, L.P., : | |
| and ALZA CORPORATION, : | |
| : | |
| Defendants. : | |
| : | |

<u>DENNIS M. CAVANAUGH, U.S. District Judge</u>

This matter comes before the Court upon motion by Johnson & Johnson, Janssen Limited Partnership and Alza Corporation ("Defendants") to transfer venue pursuant to 28 U.S.C. § 1404(a).  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78.  After carefully considering the submissions of the parties and for the following reasons, Defendants' motion to transfer venue is **denied**.

## BACKGROUND

Michael Workman ("Plaintiff"), on behalf of himself and as personal representative of the Estate of Mrs. Raquel Workman ("Decedent"), filed a multi-count Complaint sounding in products liability against Defendants in the District Court for the District of New Jersey on June

6, 2006.  Plaintiff alleges that Decedent "had significant medical history of serious, chronic migraine[s] accompanied by syncope, nausea, double and blurred vision, photophobia and vomiting."  Plaintiff further alleges Decedent suffered from neuropathic pain and sleep apnea, and was treated from 2002 through 2004 with codeine, hydrocodone, propoxyphene hydrochloride, oxycodone and Duragesic.  Plaintiff alleges Decedent's use of Duragesic, a transdermal prescription pain medication, caused her death on June 29, 2004.

Plaintiff alleges that Defendants are liable for Duragesic's alleged side effects. Defendants have moved to transfer this action to the District of Utah.  Johnson & Johnson is the parent company of Janssen and Alza, and has not designed, manufactured, marketed, distributed or sold Duragesic patches.  Alza designs and manufactures Duragesic patches.  Alza is a Delaware corporation with a principal place of business in California.  Janssen distributes and markets Duragesic patches.  Janssen is a New Jersey limited partnership with a principal place of business in Titusville, New Jersey.

At the time Decedent was using the Duragesic patch, she and Plaintiff were residents of Utah.  Further, decedent received all of her medical treatment in Utah and died in Utah. Decedent's post-mortem examination and autopsy report were done by the Medical Examiner and Assistant Medical Examiner for the State of Utah.

## DISCUSSION

The sole issue at hand is whether this matter should be transferred to the District of Utah. Defendants bear the burden of proving that transfer is warranted.  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  According to 28 U.S.C. § 1404(a), an action may be transferred to any district where it might have been brought if the transfer is "[f]or the convenience of the

parties and witnesses [and] in the interest of justice." "The purpose of Section 1404(a) is to avoid the waste of time, energy and money, and in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." Tischio v. Bontex, Inc., 16 F.Supp.2d 511, 518 (D.N.J. 1998).

In Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), the Supreme Court announced the factors courts should consider in deciding motions to transfer. The factors fall into two categories: those relating to the private interests of the parties, including (1) plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (4) cost of obtaining willing witnesses' testimony; (5) possibility of viewing evidence and/or premises at issue; (6) possibility of a jury view of the premises, if appropriate, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." The other category consists of public interest factors, including (1) relative congestion of court dockets; (2) in cases where the litigation is not closely tied to the chosen forum, the burden of imposing jury duty on residents of the forum; (3) in cases where the litigation is closely tied to the chosen forum, the interests of the forum in the outcome of the litigation; and the appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case. Id. at 508-09.

The private interest factors weigh against a transfer. First, "courts normally defer to a plaintiff's choice of forum . . . 'the plaintiff's choice of venue should not be lightly disturbed.'" Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). Since plaintiff has chosen to litigate this action in the District of New Jersey, this factor heavily weighs against a transfer.

Second, in Tischio, this Court explained that to determine the second factor--the "relative

ease of access to sources of proof"--the court should initially determine what is the plaintiff's cause of action, what are the anticipated claims and defenses, and whether the evidence cited by the parties is relevant to these. 16 F. Supp.2d at 522. Then, the court should analyze the relative ease of access to the relevant evidence.

Here, Plaintiff's claims are based on product liability. Plaintiff alleges that the Duragesic patch, a transdermal prescription pain medication taken by his wife over a three-year period, caused his wife's death. Plaintiff's claims include negligence, strict liability, breach of implied and express warranties and breach of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*. The defenses include: contributory negligence, intervening-superseding cause, and denial of breach of warranties and of a product defect. The parties cite to evidence pertaining to the decedent's medical treatment and death, and to evidence pertaining to the design manufacture, marketing and distribution of the Duragesic patch. The latter category is more relevant to the claims and defenses. *See e.g.*, Dwyer v. General Motors Corp., 853 F.Supp.2d 690, 694 (S.D.N.Y. 1994) (denying motion to transfer product defect case to district where accident occurred, and stating "[i]n light of the fact that plaintiffs have based this action on theories of product liability, conduct which would result in findings of negligence, strict liability or breach of warranties would have occurred in the District where the majority of defendant's business decisions such as design, marketing, testing and distribution were made").

New Jersey affords easier access to the relevant evidence because evidence pertaining to the distribution and marketing of the Duragesic patch is primarily located here. Janssen, which markets and distributes Duragesic, has a primary place of business in New Jersey. Janssen was also primarily responsible for communicating with regulatory officials about reports of

Duragesic's adverse effects and for recalling thousands of defective Duragesic patches.  Plaintiff has identified twenty-one entities or persons located in New Jersey who have played a significant role in addressing the safety and efficacy of the Duragesic patch.  Further, Defendants filed a witness list in another Duragesic product liability case that was tried in Texas, identifying eleven witnesses from New Jersey who have significant information regarding the patch's safety and efficacy.  Thompson v. Alza Corp., *et al.*, Cause No. 2005-11685 (113th Dist. Ct., Harris County, Tex. 2006).  Alza Corporation designs and manufactures the Duragesic patch.  Evidence pertaining to these activities is located in California, Alza's principal place of business.  Access to Alza from New Jersey and Utah is equally burdensome.  Therefore, the second factor weighs against a transfer.

The evidence located in Utah concerns the decedent's medical treatment and death.  Because this is a product liability, and not a medical malpractice action, the evidence in Utah does not concern the claims in issue.  While the evidence in Utah may be relevant to some defenses, it is insufficient to support a transfer.

Third, there is no need to discuss the availability of a compulsory process to obtain the testimony of unwilling witnesses because Defendants have not suggested that witnesses would be unwilling to testify at trial.  Even if a witness was unwilling to testify at trial, Defendants have not suggested that a videotaped deposition would be an insufficient substitute for live testimony.  This factor does not bear on the decision to transfer.  *See* Caruthers v. Amtrak, 1995 U.S. Dist. LEXIS 8740, at *8 (S.D.N.Y. June 26, 1995) ("The non-party witnesses may not be subject to compulsory process in New York, however, this factor is not controlling since there has been no suggestion by Defendant that specific non-party witnesses could not or would not appear at a trial

in New York").

Fourth, the cost of obtaining testimony from willing witnesses does not bear on the decision to transfer because the parties have not provided evidence on this issue.

Fifth, there is a possibility of viewing evidence in New Jersey and in Utah. However, the evidence located here is more relevant to this action. Specifically, documents generated by Janssen concerning the patch's marketing and distribution are primarily located in New Jersey. Defendants also maintain documents concerning the patch's safety and efficacy in a depository in Cleveland, Ohio, which is the location of Defendants' national coordinating counsel regarding Duragesic matters. However, the parties have a similar opportunity to view the documents in Ohio regardless of where this action is litigated. Further, physical access to the documents may not be necessary because these could be produced in electronic form.

There is also a possibility of viewing documents in Utah that relate to the decedent's medical treatment and death, such as records from the decedent's treating physicians, hospital reports, and the autopsy report that was done by the Medical Examiner and Assistant Medical Examiner for the State of Utah. However, these are not highly relevant to the claims at issue and could be produced in electronic form or sent to New Jersey by mail. Therefore, the fifth factor weighs against a transfer.

The sixth factor does not bear on the decision to transfer because there are no premises for the jury to view and the practical problems concerning the efficiency and expediency of trial have been considered above.

The public interest factors also weigh against transfer. First, the relative congestion of the court dockets does not favor a transfer because Defendants have not provided evidence that

6

dockets in the District of Utah are any more or less congested than dockets in this Court. Second, to evaluate the burden of imposing jury duty on the forum's residents and the forum's interest in the outcome of this litigation, the court must first determine "the locus of the alleged culpable conduct . . . and the connection of the conduct to the plaintiff's chosen forum." <u>Van Cauwenberghe v. Baird</u>, 486 U.S. 517, 528 (1988).

This is a product liability action. The alleged culpable conduct relates to a flaw in the design, manufacture, marketing and/or distribution of the Duragesic patch. Some of this conduct took place in New Jersey, where Janssen marketed, distributed and managed the recall of defective Duragesic patches. Other alleged culpable conduct took place in California, where Alza designed and manufactured Duragesic. None of the culpable conduct took place in Utah. Therefore, Plaintiff's chosen forum has the closest connection to the alleged culpable conduct.

New Jersey residents will not be unduly burdened by jury duty. Also, New Jersey has a strong interest in the outcome of this litigation because it seeks to encourage the distribution of safe products within its borders. *See e.g.* <u>Gantes v. Kason Corp.</u>, 145 N.J. 478, 490 (16) (noting in a choice of law dispute that New Jersey "has a strong interest in encouraging the manufacture and distribution of safe products for the public and, conversely in deterring the manufacture and distribution of unsafe products within the state").

Finally, the governing law factor does not favor a transfer to Utah. It is unclear yet which law will apply. Also, "[t]he 'governing law' factor is to be accorded little weight in a motion to transfer venue because federal courts are deemed capable of applying the law of other states." <u>Astor Holdings, Inc. v. Roski</u>, 2002 U.S. Dist. LEXIS 758, at *13 (S.D.N.Y. Jan. 15, 2002).

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to transfer is hereby **denied**.  An appropriate Order accompanies this Opinion.

<u>  S/ Dennis M. Cavanaugh            </u>
Hon. Dennis M. Cavanaugh, U.S.D.J.

Date:   June  <u>  26  </u>, 2007

8